UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHERMAN WESTBROOK,

      Plaintiff,

                               Case No. 1:21-cv-476
      v.                        JUDGE DOUGLAS R. COLE

CITY OF CINCINNATI, et al.,

      Defendants.

## OPINION AND ORDER

The Defendants (the City of Cincinnati and Cincinnati police officers Rasheen Jennings, Kenneth Dotson, and Brandon Dean) move to dismiss (*see* Doc. 5) Plaintiff Sherman Westbrook's Complaint (Doc. 1). They believe that Westbrook's Complaint fails to state a claim upon which relief could be granted and that Dotson and Dean are entitled to qualified immunity. They do not, however, request that the Court dismiss Westbrook's Fourth Amendment allegations against Jennings. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** this motion. (Doc. 5).

## BACKGROUND

The relevant facts are straightforward. On July 26, 2019, plainclothes police officers busted down the door of Westbrook's girlfriend's apartment, where Westbrook and his son were visiting. (Doc. 1, #3). The officers apparently had a felony warrant for Westbrook's arrest. (*See* Doc. 5, #17). Westbrook alleges that Officers Dean and Dotson restrained him while Officer Jennings tased him "in the eye and mouth"

without him resisting. (Doc. 1, #3–4). Westbrook further alleges that he fell to the ground, defecated and urinated on himself, and was tased again. (*Id.* at #4).

On July 16, 2021, Westbrook filed the Complaint in this Court. (*Id.*). He sues Jennings, Dotson, and Dean in their individual and official capacities and the City of Cincinnati. Westbrook makes three central claims. First, he claims that the officers used excessive force to arrest him, violating his Fourth Amendment right to be free from unreasonable seizure. (*Id.* at #5). Second, he claims that the officers intentionally inflicted emotional distress upon him. (*Id.* at #5–6). And third, he claims that his injuries are a "direct and proximate result" of the City's negligent retention of the officers. (*Id.* at #6–7). Westbrook also makes "claims" under 42 U.S.C. § 1983 and § 1988 that he calls his fourth and fifth claims. More on that later. In December 2021, the Defendants moved to dismiss all of Westbrook's claims except for his Fourth Amendment claim against Jennings. (Doc. 5). That motion is now before the Court.

## LAW AND ANALYSIS

A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citation omitted). Westbrook, then, "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* In making that assessment, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 546–47, such that the asserted claim is "plausible on its face," *Iqbal*, 556 U.S. at 678.

Before applying that standard here, some housekeeping is in order. First, as mentioned above, Westbrook purports to set forth five "claims" in his Complaint. The first three—excessive force, intentional infliction of emotional distress, and negligent retention—are all tangible claims. But his last two claims, that the Defendants violated 42 U.S.C. § 1983 and § 1988, are not.

The Fourth Amendment prohibits the use of excessive force by police in effecting arrests. *See* U.S. Const. amend. IV (setting out "[t]he right of the people to be secure in their persons … against unreasonable … seizures"). But the Fourth Amendment itself does not provide a cause of action to someone who believes they have endured excessive force. The vehicle for that action is § 1983.[1] So his excessive force claim under the Fourth Amendment (Count 1) is in fact a § 1983 claim. Counts 2 (intentional infliction) and 3 (negligent retention), by contrast, are state-law claims. So far, so good. But there is no such thing as the freestanding § 1983 claim Westbrook purports to assert in Count 4. Section 1983 "does not itself create any substantive

---

[1] Section 1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

rights; it provides a cause of action for rights found elsewhere." *Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *2 (6th Cir. Mar. 29, 2022) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017)). As the Defendants note, "no one violates § 1983." (Doc. 5, #18). In the same vein, § 1988 permits a court to award attorneys' fees to a prevailing party in a § 1983 action (in many cases). No one "violates" that provision either.[2]

So, Westbrook actually advances *three* claims: a § 1983 excessive force claim (Count One), and two state-law claims—intentional infliction of emotional distress (Count Two) and negligent retention (Count Three). Moreover, the Complaint suggests that the first two are pleaded against all Defendants, while the third (negligent retention) is pleaded solely against the City. The Motion (Doc. 5), meanwhile, asks the Court to dismiss all claims against all Defendants, except Westbrook's Fourth Amendment excessive force claim (Count One) against Jennings in his individual capacity.

As Westbrook's Complaint sets forth federal law (Count One) and state law (Counts Two and Three) claims, and the analysis differs as to each, the Court will start with the federal claim and then discuss the state claims.

---

[2] Section 1988 states, in relevant part: "In any [applicable] action or proceeding … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." 42 U.S.C. § 1988.

A.      **Section 1983 Excessive Force Claim**

1.      **The Official-Capacity Claims Are Duplicative Of The Claim Against The City, And The Latter Fails As A Matter Of Law.**

A plaintiff in a § 1983 action can assert either individual-capacity or official-capacity claims, or both, against individual defendants such as the officers here. Here, Westbrook asserts both. The effect of the two types of claims, though, is different. If an officer were found liable on an individual-capacity claim, liability would run to that particular officer. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). But Westbrook's claims against each officer "officially," i.e., in their official capacities, are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). For relief, then, the plaintiff "must look to the government entity itself" rather than its agents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). But Westbrook already asserts this claim against the City. (Doc. 1, #6–7) So Westbrook's official-capacity claims are merely duplicative of that claim.

As for the claim against the City itself, the question is when is a city liable for its officers' actions? *Monell* is the seminal case addressing that issue. That case (and § 1983) requires that, for liability to attach, a constitutional violation "occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 691). To meet this burden, Westbrook can offer one of four things: (1) the existence of an illegal official policy or enactment; (2) the existence of a policy of inadequate training or supervision; (3) the existence of a custom of tolerance or acquiescence to federal rights violations; or (4) that an official

5

with final decision-making authority ratified the illegal actions. *See id.*; *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Westbrook certainly expresses his desire that the City be held accountable. But the Complaint is unclear *why*, under *Monell*, that should be. (*See* Doc. 1, #11–12). As the Defendants point out, the Complaint includes "no description of any official policy, decision by a final policymaker, failure to train or custom of tolerance, that might give rise to a *Monell* claim." (Doc. 5, #19). Westbrook's response, though, clarifies that he intended to make a failure-to-train claim, which *is* one of the ways to show liability under *Monell*. (Doc. 7, #50 –51). So, in the interest of fairness, the Court will consider that claim.

A failure-to-train claim ultimately requires Westbrook to show "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478 (cleaned up).[3] Thus at the complaint stage, Westbrook must allege facts that make it at least plausible that he can make that showing. He believes that he has done so. After all, he alleges that Jennings and Dean "have been the subject of numerous investigations" including "allegations of excessive force, wrongful arrests, stealing money from citizens and

---

[3] The Supreme Court has acknowledged a "narrow range of circumstances" in which a single event may suffice for a failure-to-train claim. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). But to take advantage of that option, Westbrook must show "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell County*, 453 F. App'x 557, 567 (6th Cir. 2011). He does not allege that here.

6

other violations of law and police procedure." (Doc. 1, #4). Westbrook also alleges that "some" of those investigations found "Defendants' conduct to be wrongful." (*Id.*).

This is not enough. Westbrook does not allege, for example, "a single fact related to the training the City provides its police officers, any prior incidents involving comparable uses of force by [local law enforcement], or anything else that would plausibly suggest that the city maintained a policy or custom that contributed to the alleged deprivations" of his rights. *Boddy v. City of Memphis*, No. 22-5259, 2022 WL 12258977, at *3 (6th Cir. Oct. 21, 2022). He does not point to a single decision that the City made that could give rise to a failure-to-train claim.

True enough, Westbrook cites prior internal investigations conducted against two of the officers involved here. But an allegation that two officers (in a large department) violated various unidentified departmental procedures over the course of their careers does not show "a history of abuse" or put the City "on notice that the training *in this particular area* was deficient." *Burgess*, 735 F.3d at 478 (cleaned up) (emphasis added). Put simply, Westbrook has not shown why *the City* would be liable under *Monell* for the officers' conduct. So his official-capacity excessive force claims against the officers and his excessive force claim against Cincinnati all fail.

### 2. The Individual-Capacity Excessive Force Claims Against Dotson And Dean Can Proceed

The Defendants next ask the Court to dismiss Westbrook's individual-capacity claims against Dotson and Dean on the ground of qualified immunity. For his part, Westbrook believes the alleged facts should prevent Dotson and Dean from receiving qualified immunity.

As this Court has noted, qualified immunity and dismissal on the pleadings are often a "bad fit." *Meadows v. Coppick*, No. 1:21-CV-322, 2022 WL 14752283, at \*6 (S.D. Ohio Oct. 25, 2022) (citing *Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir. 2020)). This is because "without more than the complaint to go on, the court cannot fairly tell whether a case is obvious or squarely governed by precedent, making qualified immunity inappropriate." *Siefert*, 951 F.3d at 761 (cleaned up). But such a preference is general, not absolute, *see id.*, so the Court proceeds with its analysis.

Turning to the substance of Dotson and Dean's qualified immunity defense, the Court must first determine (1) whether Westbrook has plausibly alleged a violation of his constitutional rights, and (2) whether that constitutional right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). He has done both.

On Westbrook's version of the facts, Jennings tased him while he was not resisting arrest. The Sixth Circuit has repeatedly held that "the right to be free from physical force when one is not resisting the police is a clearly established right." *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008); *see also Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010). Specifically on point here, it is clearly established in this Circuit that "an individual has a constitutional right not to be tased when he or she is not actively resisting."[4] *Browning v. Edmonson County*, 18 F.4th 516, 525 (6th Cir. 2021).

---

[4] The relevant events here occurred in 2019, and the Sixth Circuit did not issue *Browning* until 2021. But the *Browning* court noted that the right of one not to be tased while not actively resisting was clearly established "[c]ertainly by 2018." *See Browning*, 18 F.4th at 525; *see also Landis v. Baker*, 297 F. App'x 453 (6th Cir. 2008) (holding that tasing a subdued defendant repeatedly violated clearly established law in November 2004).

Recall, however, that there is no allegation that Dotson or Dean exerted excessive force on Westbrook. After all, Jennings tased Westbrook, not them. (Doc. 1, #4). But even without *using* excessive force on an inmate, an officer failing to prevent the use of excessive force can be held liable if "the officer observed or had reason to know that the excessive force would be or was being used and that the officer had both the opportunity and the means to prevent the harm from occurring." *Wright v. City of Euclid*, 962 F.3d 852, 872 (6th Cir. 2020) (citation omitted). So the Court must next determine whether Westbrook has adequately alleged those officers' involvement in the constitutional violation alleged above. Westbrook alleges that Dean "restrained" him during the tasing and that Dotson "aid[ed] and encourage[d]" the tasing. (*Id.*).

The Defendants cite *Smith v. City of Troy*, 874 F.3d 938 (6th Cir. 2017), as a reason Dean should not be liable. There, the Sixth Circuit held that no reasonable juror could find that an officer had the "opportunity and means to prevent" an excessive tasing because he "was occupied trying to gain control of [the Defendant's] arms while [the other officer] was deploying the taser." *Id.* at 946.

On Westbrook's version of the facts, however, this case differs from *Smith*. In that case, the officer had taken Smith to the ground "to handcuff him and restrain him forcibly." *Id.* at 945. Thus, the officer was "occupied trying to gain control of Smith's arms." *Id.* at 946. Here, Westbrook alleges that the officers came into the apartment, grabbed him by the arms, and tased him without him resisting. Presumably, nothing distracted Dean from telling Jennings not to tase Westbrook or

otherwise preventing the alleged excessive force, even if he held Westbrook's arms while Jennings tased Westbrook.

As for Dotson, the Defendants claim that Westbrook proffers "no other allegations" except that Dotson "aided and encouraged the tasing." (Doc. 5, #22). But Westbrook does allege Dotson's presence for the entire interaction. And presumably Dotson, like Dean, could have stepped in to tell Jennings not to tase (or to stop tasing) a non-resisting, detained Westbrook. *See Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015). With only Westbrook's version of the facts to go on, the Court cannot say at this stage that Dean or Dotson could not have intervened to prevent him from being tased while he was not resisting. The facts revealed as the case proceeds may or may not change that analysis. But Dotson and Dean's qualified immunity defenses fail for now, and Westbrook's claims against them for failure to intervene to prevent excessive force may go on.

**B.     The State-Law Claims Fail As A Matter Of Law.**

**1.     Intentional Infliction of Emotional Distress Claim**

The Defendants next argue that the Court should dismiss Westbrook's intentional infliction of emotional distress claim. They believe this claim falls outside the relevant statute of limitations and that Westbrook has not adequately stated a claim for relief even if it did not. Westbrook, for his part, believes that the statute of limitations has not yet run and that he has adequately pleaded the claim.

This claim and Westbrook's negligent retention claim are state-law claims, and this Court exercises only supplemental jurisdiction over them. So the Court applies

10

Ohio law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). For this claim, Ohio law requires Westbrook to allege four things: "(1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

The Court need not address the parties' competing claims about whether the statute of limitations has run because it is evident in Westbrook's allegations that he has not adequately alleged an intentional infliction of emotional distress claim. Westbrook provides only conclusory allegations outfitted in words resembling the relevant legal standard rather than specific facts that could give rise to a claim. *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." (quoting *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)). For example, he alleges that he suffered "emotional distress" and "mental anguish" but offers no facts to support such a claim. And further, he contends that the officers' conduct met the "extreme and outrageous" threshold without explaining how or why.

As the Court noted above, Dean merely restrained Westbrook after the officers entered the apartment, and Dotson stood by. It is unclear to the Court that even Jennings' (potentially) wrongful tasing of Westbrook rises to "extreme and outrageous" as required by Ohio law. But perhaps most importantly, Westbrook

11

provides no evidence of the emotional anguish he suffered because of the tasing. The Complaint only makes the conclusory, unsubstantiated allegation that he sustained some distress. (Doc. 1, #4, 6). Westbrook, then, has failed to show multiple of the requisite elements of such a claim, and that claim fails.

### 2. Negligent Retention Claim

The Defendants finally ask the Court to dismiss Westbrook's negligent retention claim against the City both because such a claim cannot survive without Westbrook's intentional infliction of emotional distress claim and because Westbrook provides no support for the claim in the first place.

The Defendants are correct that Ohio law requires that Westbrook establish a predicate tort claim against one of the officers to make a colorable claim of negligent retention against the City. *See Minnich v. Cooper Farms, Inc.*, 39 F. App'x. 289, 296 (6th Cir. 2002); *see also Myers v. Goodwill Indus. of Akron, Inc.*, 721 N.E.2d 130, 134 (Ohio Ct. App. 1998) (rejecting a negligent retention claim where the plaintiff did not establish intentional infliction of emotional distress). And since the Court dismisses Westbrook's predicate claim, that one would not count. But presumably Westbrook's alleged constitutional torts against the officers, if proven, *could* count.

Even if Westbrook could show a predicate tort, however, his claim still fails. Chapter 2744 of the Ohio Revised Code, entitled Political Subdivision Tort Liability, provides municipal corporations broad immunity against claims for negligence, including negligent retention. *See, e.g., Bevelacqua v. Tancak*, 204 N.E.3d 12, 26 (Ohio Ct. App. 2022) ("Although the [Ohio] Supreme Court did not have cause to

consider a claim of negligent retention in *McConnell* [*v. Dudley*, 144 N.E.3d 369 (2019)], its reasoning applies with equal force to Mr. Bevelacqua's claim for the same."). So the City is shielded from liability under Ohio law. *See Williams v. Miniard*, No. 1:22-cv-1, 2023 WL 1861445, at *14 (S.D. Ohio Feb. 9, 2023). Westbrook has failed to plausibly allege that his claim here falls within any statutory exception to that immunity, *see* Ohio Rev. Code § 2744.03, so his negligent retention claim fails.

## CONCLUSION

Having addressed Westbrook's various claims above, the Court **GRANTS IN PART** the Defendants' Motion to Dismiss (Doc. 5) as it relates to Westbrook's official-capacity claims and his state-law claims against the Defendants. The Court also **DENIES IN PART** the Defendants' Motion to Dismiss as it relates to Westbrook's individual-capacity Fourth Amendment claims against Dotson and Dean.

    **SO ORDERED.**

March 31, 2023
**DATE**

        **DOUGLAS R. COLE**
        **UNITED STATES DISTRICT JUDGE**