UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SHERMAN WESTBROOK,**

    **Plaintiff,**

    v.

**CITY OF CINCINNATI, et al.,**

    **Defendants.**

Case No. 1:21-cv-476

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Sherman Westbrook claims that Defendants Rasheen Jennings, Kenneth Dotson, and Brandon Dean (the Officers), violated the Fourth Amendment's prohibition on excessive force when Jennings tased him during the course of an arrest, and Dotson and Dean failed to intervene. The Officers now move for summary judgment. And because Westbrook filed his response in opposition late, the Officers further move to strike Westbrook's response. For the reasons more fully discussed below, the Court **DENIES** Defendants' Motion to Strike Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 37), but **GRANTS** Defendants' Motion for Summary Judgment (Doc. 30), and **DISMISSES** this case, albeit **WITHOUT PREJUDICE**.

## BACKGROUND

On July 26, 2019, Officers Jennings, Dotson, Dean, and Bolte[1] arrested Westbrook at his then-girlfriend's apartment in Cincinnati, Ohio. (Def.'s Proposed

---

[1] Westbrook did not name Officer Jason Bolte as a Defendant. (*See generally* Doc. 1).

Undisputed Facts, Doc. 31, #1241).[2] At some point while trying to effectuate the arrest, Jennings tased Westbrook. (*Id.* at #1243–44). All parties agree about those facts. But the Officers and Westbrook tell very different stories about how the arrest and tasing unfolded. The Court relays each account in turn.

Start with the Officers' version of events, which begins outside the then-girlfriend's apartment building. (Jennings Depo., Doc. 20, #171; Dotson Depo., Doc. 21, #332; Bolte Depo., Doc. 22, #520; Dean Depo., Doc. 23, #701–02). According to the Officers, when they arrived at the apartment building, Westbrook noticed them and fled inside. (Doc. 20, #174; Doc. 21, #333; Doc. 22, #521; Doc. 23, #704–05). Jennings yelled at Westbrook to stop, and Dotson warned him that they would tase him if he didn't. (Doc. 20, #174; Doc. 21, #333–34). But Westbrook didn't stop, so the Officers followed him. (Doc. 20, #177–78; Doc. 21, #333–34; Doc. 23, #707–08). Jennings and Dotson reached Westbrook just as he was shutting the apartment unit's door, at which point they forced the door open, knocking it off its hinges. (Doc. 20, #180–84; Doc. 21, #336–37). Dean arrived soon after. (Doc. 23, #708–09). Once inside the apartment unit, Dotson observed Westbrook "coming from behind" with "his arms [] open" as if ready to tackle someone or to do a "double leg takedown." (Doc. 21, #340). So did Jennings, who noticed Westbrook "in a crouching position [which suggested that Westbrook] was about to tackle [him]." (Doc. 20, #184). In response, Jennings

---

[2] Pursuant to the Court's Civil Standing Order (I)(F)(2)(a)–(c), the Officers filed a list of Proposed Undisputed Facts (Doc. 31) along with their Motion for Summary Judgment (Doc. 30). Westbrook admitted many of those facts. (Doc. 35, #1263 (admitting to paragraphs 1–5, 13–16, and 29–35)). Unless otherwise noted, the Court cites the Officers' proposed list only for admitted facts.

2

deployed his taser. (*Id.* at #181). But instead of the taser barbs hitting Westbrook's body, where Jennings says he aimed, the barbs struck Westbrook's face. (*Id.*).

According to the Officers, despite being tased, Westbrook didn't relent. He continued to "struggle and fight." (*Id.* at #181–82). Because Westbrook "refus[ed] to put his hands behind his back" and "resist[ed]," Jennings continued deploying the taser while Dean and Dotson placed Westbrook in handcuffs. (Doc. 20, #190–91; Doc. 21, #352, 356; Doc. 23, #713–14). According to Jennings, Westbrook could have complied with the Officers' commands and put his arms behind his back even while being tased. (Doc. 20, #207). Dean concurred that Westbrook resisted arrest. (Doc. 23, #728). Bolte, who didn't enter the apartment unit until after the tasing, interviewed everyone involved in the incident. (Doc. 22, #522–23, 526–34). Based on those interviews, he issued a Use of Force Report, which concluded that Jennings' use of the taser complied with the Cincinnati Police Department's policy. (Doc. 22-1, #604–06).

Westbrook remembers things differently. To start, he says that he was already inside the apartment unit when he heard the Officers at the door. (Westbrook Depo., Doc. 29, #1155). As he approached the door to investigate, the Officers forced their way through, pulling the door off its hinges and pinning Westbrook behind the door. (*Id.* at #1104). Then, while still pinned, Westbrook says Dotson and Dean started grabbing for his hands. (*Id.* at #1104, 1138–39). As they did, they told him to "stop resisting," to which he replied that he wasn't resisting, but rather, that they were "pulling [him] back and forth." (*Id.* at #1104–05, 1140). At that point, Westbrook

3

recalls Dean instructing Jennings to tase Westbrook. (*Id.* at #1105, 1139). Jennings then deployed his taser and told Westbrook to "stop moving." (*Id.* at #1140). At the time Jennings tased Westbrook, the Officers had handcuffed one of Westbrook's hands. (*Id.* at #1164). And sometime during the commotion, Westbrook had become unpinned, though he doesn't recall precisely what happened with the door. (*Id.*). In any event, the taser barbs hit Westbrook's face, causing him to fall to the floor and defecate on himself. (*Id.* at #1105).

After the tasing and handcuffing, the parties' stories reconverge. The Officers, having realized that the taser barbs were lodged near Westbrook's eye and lip, called for the paramedics. (*Id.* at #1105; Doc. 20, #189, 194; Doc. 21, #356–57). The paramedics then transferred Westbrook to the hospital where doctors surgically removed the barb near his eye. (Doc. 31, #1245).

As a result of all that, Westbrook was charged in the Hamilton County Municipal Court with three crimes. (*Id.*). First, criminal trespass for "enter[ing] the [apartment building] after being evicted, and warned several times not to return." Criminal Compl., *State v. Westbrook*, No. 19B19088A (Hamilton Cnty. Mun. Ct. July 26, 2019); (Doc. 30-1, #1228). Second, resisting arrest for "attempt[ing] to tackle Officer Jennings." Criminal Compl., *State v. Westbrook*, No. 19B19088B (Hamilton Cnty. Mun. Ct. July 26, 2019); (Doc. 30-1, #1229). And third, obstructing official business for "fle[eing] on foot from police officers during an investigation of Drug Trafficking at 4047 Reading Road." Criminal Compl., *State v. Westbrook*, No. 19B19088C (Hamilton Cnty. Mun. Ct. July 26, 2019); (Doc. 30-1, #1230). Westbrook

ultimately pleaded no contest to each of the three crimes, and the trial judge found him guilty of each. (Doc. 30-2, #1232, 1234–35; Doc. 31, #1245–46). Westbrook has not challenged those convictions. (Doc. 31, #1246).

He did, however, avail himself of an alternative course of action. Namely, he filed this lawsuit on July 16, 2021, alleging, among other things,[3] that the Officers used excessive force when Jennings tased him and Dotson and Dean failed to intervene. (Doc. 1, #3–5).

The Officers now move for summary judgment. (Doc. 30). They press three arguments: (1) Westbrook's no-contest plea and guilty convictions judicially estop him from challenging those findings here; (2) under *Heck v. Humphrey*, Westbrook cannot bring this excessive force claim because it would "necessarily imply the invalidity" of his state conviction, and in particular, his conviction for resisting arrest; and (3) even if Westbrook clears those first two hurdles, the Officers are nonetheless entitled to qualified immunity. (*Id.* at #1217–26).

Westbrook responded—five days late—arguing that genuine disputes of material fact preclude summary judgment on all three fronts. (*See generally* Doc. 35).

Given that Westbrook responded after the deadline the local rules impose, *see* S.D. Ohio Civ. R. 7.2(a)(2), the Officers moved to strike Westbrook's response. (Doc. 37). Westbrook opposes the motion to strike on the grounds that the tardy filing was

---

[3] Westbrook also brought claims for intentional infliction of emotional distress, negligent retention, violation of 42 U.S.C. § 1983, and violation of 42 U.S.C. § 1988. (Doc. 1, #5–8). But the Court dismissed those claims, leaving only his excessive force claim. (Doc. 10). He also initially named the City of Cincinnati as a Defendant. (Doc. 1, #2). In the same Opinion and Order that the Court dismissed Westbrook's non-excessive force claims, it also dismissed the City of Cincinnati as a Defendant. (Doc. 10).

5

an "inadvertent error," not a deliberate attempt to flout the Court's briefing deadlines. (Doc. 38, #1276).

The Officers have since replied to Westbrook's summary-judgment opposition. (Doc. 39). They did not, however, reply to his motion-to-strike opposition by the deadline the local rules impose. S.D. Ohio Civ. R. 7.2(a)(2). So both motions—the motion for summary judgment and the motion to strike—are now ripe.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-movant bears the burden of proof at trial, as is the case with respect to the Officers' motion for summary judgment, the movant (here, the Officers) can establish that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law by showing that the non-moving party (here, Westbrook) lacks evidence to support an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

Further, as the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In sum, the non-moving party, at this stage, must present some "sufficient disagreement" that would warrant submitting the dispute to a jury. *See Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Producers Serv. Corp.*, 95 F.4th 445, 449 (6th Cir. 2024).

## LAW AND ANALYSIS

### A. Westbrook Failed to Meet the Briefing Deadlines.

The Court begins with a preliminary matter. As noted, because Westbrook responded to the summary judgment motion five days late, the Officers move to strike that response as untimely. (*See generally* Doc. 37). The Federal Rules of Civil Procedure, however, "do not provide for a motion to strike documents other than pleadings." *United States ex rel. Kramer v. Doyle*, No. 1:18-cv-373, 2023 WL 3243195, at *3 (S.D. Ohio May 4, 2023) (collecting cases); *see also* Fed. R. Civ. P. 12(f). Ultimately, then, since the Officers seek to strike Westbrook's response to a dispositive motion, not a pleading, the Court **DENIES** the Officers motion to strike, especially given that "[m]otions to strike are viewed with disfavor and are not frequently granted," *Kemen v. Cincinnati Bell Tel. Co., LLC*, No. 1:22-cv-152, 2024 WL 1242295, at *4 (S.D. Ohio Mar. 22, 2024) (quoting *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015)).

That said, Westbrook did respond late. The Officers moved for summary judgment on December 12, 2024. (Doc. 30). Westbrook's response in opposition was thus due on January 2, 2025. S.D. Ohio Civ. R. 7.2(a)(2). But he neither filed a brief by that date nor sought an extension. And on January 7, 2025, when he did file his (untimely) response, (Doc. 35), he did not bother seeking leave of Court to do so. True, Westbrook did accept responsibility for the "inadvertent" late-filing and belatedly requested that the Court grant him post-filing leave to file his response. (Doc. 38, #1276). But as the Court has previously highlighted, "[b]riefing schedules are not suggestions," *Tumbleson v. Lakota Loc. Sch. Dist.*, No. 1:23-cv-395, 2024 WL 4406911, at *2 (S.D. Ohio Oct. 4, 2024), inadvertent tardiness notwithstanding.

In light of Westbrook's failure to comply with the deadlines, the Court could perhaps treat the Officers' motion as unopposed and Westbrook's arguments as forfeited. *Id.* (citing *Castleberry v. Neumann L. P.C.*, No. 1:07-cv-856, 2008 WL 5744179, at *5 (W.D. Mich. July 9, 2008)). But given the relatively minimal delay, and the lack of any prejudice, the Court is not inclined to do so. And in any event, even after considering Westbrook's response in opposition, his claims are *Heck*-barred. So, the Court sees little point in refusing to address his arguments.

**B.    *Heck* Bars Westbrook's Excessive Force Claim.**

Now on to the main event. The Officers argue that three doctrines entitle them to summary judgment: judicial estoppel, the *Heck* bar, and qualified immunity.[4]

---

[4] The Officers seem to conflate their arguments regarding judicial estoppel and *Heck v. Humphrey*. (*See* Doc. 30, #1217–19). But those are separate doctrines. *See, e.g.*, *Chaney-Snell v. Young*, 98 F.4th 699, 707–14 (6th Cir. 2024) (analyzing judicial estoppel and the *Heck* doctrine separately).

8

Because the Court agrees that *Heck* prevents Westbrook from asserting his excessive force claim in federal court, it need not, and thus does not, reach the Officers' judicial estoppel or qualified immunity arguments.

The *Heck* doctrine bars a plaintiff from proceeding on a claim under 42 U.S.C. § 1983 "if success on that claim would 'necessarily imply the invalidity' of an underlying state criminal conviction." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). To overcome *Heck*'s bar and pursue a § 1983 claim that falls within its sphere, a plaintiff must show that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. In other words, if the judgment in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, the court must dismiss the action unless the plaintiff can show that the conviction was invalidated; but if the § 1983 judgment would not do so, the court should let the action proceed, absent some other bar to the suit. *Id.*

Here, Westbrook asserts a § 1983 claim based on the Officers' alleged use of excessive force. Helpfully, the Sixth Circuit has specifically identified two scenarios in which *Heck* may bar a § 1983 excessive force claim. *Hayward*, 759 F.3d at 608. "The first is when the criminal provision makes the lack of excessive force an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). "The second is when excessive force is an affirmative defense to the crime[.]" *Id.* (citing *Cummings v. City*

9

*of Akron*, 418 F.3d 676, 684 (6th Cir.2005)). That is because, in both situations, "the § 1983 suit would seek a determination of a fact that, if true, would have precluded the conviction." *Hayward*, 759 F.3d at 609 (cleaned up).

Beyond merely laying out the applicable framework, *Hayward* also provides helpful instruction on how that excessive force framework plays out in the context of Ohio's resisting-arrest statute, Ohio Rev. Code § 2921.33—the statute underlying one of Westbrook's convictions here. In that setting, *Hayward* adopts a bright-line rule: *Heck* bars § 1983 claims resting on allegations of pre-arrest excessive force, but not those resting on post-arrest excessive force. *Id*. at 611. In explaining the basis for that rule, *Hayward* acknowledged some confusion in Ohio law as to whether the lack of excessive force is actually an element of the crime of resisting arrest. *Id*. at 610–11. But whatever tension may exist on that front, the court noted it was beyond dispute that the presence of excessive force would constitute an affirmative defense. *Id*. at 611. Thus, one way or the other, "a § 1983 claim of [pre-arrest] excessive force would necessarily imply the invalidity of an underlying conviction for resisting arrest." *Id*. And that, in turn, means *Heck* bars pre-arrest excessive force claims by plaintiffs convicted of resisting arrest.

By contrast, *Heck* does not "bar § 1983 suits alleging *post-arrest* excessive force." *Id*. (emphasis in original). That's because "excessive force occurring after" a plaintiff's resistance and arrest does "not necessarily imply the invalidity of the underlying conviction for resisting arrest." *Id*.

So to discern whether *Heck* bars a plaintiff's § 1983 excessive force claim "a court must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct" to determine when the allegedly unlawful force was used in relation to when the officers accomplished the arrest. *Id.* at 612.

In other words, whatever *other* factual disputes may exist here, only one set of facts matters for resolving the *Heck* question: Whether the Officers allegedly used excessive force *before* they arrested Westbrook, or *after*. *See Hayward*, 759 F.3d at 612–13; *see also Chaney-Snell v. Young*, 98 F.4th 699, 710 (6th Cir. 2024) (explaining that *Heck* "exists to determine whether (and when) a § 1983 plaintiff has 'a complete and present cause of action,'" not "to identify the facts that are in 'genuine dispute' at the summary-judgment stage" (citations omitted)). On that front, recall that Westbrook bases his excessive force claim on Jennings tasing him, and Dotson and Dean failing to intervene. (*See* Doc. 1, #4). So the Court must home in on when that tasing occurred compared to when the Officers completed Westbrook's arrest.

That comparison dooms Westbrook's claim. Even viewing the facts in Westbrook's favor (as the Court must at summary judgment), the record reveals that Westbrook's excessive force claim challenges exclusively pre-arrest conduct. Indeed, in his opposition, Westbrook concedes that "Jennings deployed his taser" while *"[i]n the process of arresting [him],"* and that the Officers placed him in handcuffs *after* Jennings tased him. (Doc. 35, #1254–55 (emphasis added)). Westbrook's deposition testimony confirms the same. (*See* Doc. 29, #1105, 1164). Those concessions show that

11

Westbrook challenges pre-arrest excessive force, which *Heck* plainly bars. *Hayward*, 759 F.3d at 612. In other words, Westbrook has identified no facts showing that the Officers acted with excessive force *after* they had "handcuffed and subdued" him. *Baker v. Claiborne Cnty.*, No. 3:21-cv-380, 2024 WL 2885902, at *4 (E.D. Tenn. June 7, 2024), *appeal dismissed sub nom. Baker v. Claiborne Cnty.*, No. 24-5620, 2024 WL 4529704 (6th Cir. Sept. 26, 2024); *see also Parvin v. Campbell*, 641 F. App'x 446, 450 (explaining that where the plaintiff described being handcuffed after being pepper-sprayed, his excessive force claim "ar[ose] out of the same conduct that led to his conviction"). To the contrary, once the Officers handcuffed Westbrook, he maintains that he laid on the apartment floor until the paramedics arrived to transport him to the hospital. (Doc. 29, #1105–06; *see also* Doc. 31, #1245).

True, Westbrook testified that the tasing occurred when the Officers had one of his hands cuffed. (Doc. 29, #1164). But that doesn't transform Westbrook's *Heck*-barred pre-arrest excessive force challenge into a viable post-arrest excessive force claim. The Sixth Circuit has made clear that § 1983 excessive force claims can proceed only "where the alleged force occurred after the resistance and the *completion of the arrest*." *Hayward*, 759 F.3d at 612 n.4 (emphasis added). Handcuffing one of Westbrook's hands does not amount to a completed arrest. Rather, by Westbrook's own accounting, the tasing occurred before the Officers completed the arrest—i.e., before they had fully subdued him and placed both of his hands in cuffs. (*See* Doc. 29, #1104–06; *see also* Doc. 21, #345, 347). So he cannot escape *Heck*'s bar on that fact (and indeed, other than mentioning it as a "disputed fact" in passing, Westbrook

12

didn't bother to explain why having one hand cuffed might save his excessive force claim from *Heck*'s bar).

Curiously, in his opposition, Westbrook did not meaningfully engage with *Hayward* or otherwise cite any caselaw explaining why his pre-arrest excessive force claim escapes *Heck*'s ambit. Rather, his sole counterargument is that the Hamilton County criminal complaint for resisting arrest incorrectly alleged that the arresting officer had to "tackle[]" Westbrook. (Doc. 35, #1265). And according to Westbrook, that factual discrepancy means the Officers cannot rely on his no-contest plea to argue that *Heck* bars his excessive force claim. (*Id.*). The Court, however, sees two problems with that argument.

First, Westbrook misconstrues what the criminal complaint alleged. It plainly stated that during Westbrook's arrest, "[Westbrook] attempted to tackle Officer Jennings after fleeing of foot." (Doc. 30-1, #1229). True, when the city solicitor relayed the criminal complaint's facts at Westbrook's state-court plea hearing, she seemingly misstated that "Westbrook had to be tackled by the arresting officer." (Doc. 30-2, #1234). But how the city solicitor conveyed the facts doesn't change what the criminal complaint alleged—that is, that Westbrook attempted to tackle the Officers, not the other way around. And regardless, the state court still found Westbrook guilty of resisting arrest. (*Id.* at #1234–35).

Second, and relatedly, if "the allegations in the resisting arrest complaint are false," as Westbrook maintains, (Doc. 35, #1265), then he must address that concern through a challenge to his conviction in state court, not through a § 1983 claim here.

13

Indeed, at his state-court plea hearing, after the city solicitor relayed the facts, Westbrook's counsel "st[ood] by." (Doc. 30-2, #1234). Westbrook instead could have challenged those facts at his hearing or raised excessive force as an affirmative defense. But he did neither. Rather, he pleaded no contest, which as the name suggests, means he did not contest the record. *See, e.g., State v. Erskine*, 29 N.E.3d 272, 277 (Ohio Ct. App. 2015) ("The no contest plea is an admission to the facts as laid out[.]"). Westbrook's present attempt to contest the facts underlying his state-court conviction—for example, by testifying that he never resisted arrest, but rather that the Officers were "pulling [him] back and forth," which mimicked resistance, (Doc. 29, #1139)—if credited, would "necessarily imply the invalidity" of that conviction. *Hayward*, 759 F.3d at 608–09. As a result, *Heck* bars his claim.

All told, because the state court found Westbrook guilty of resisting arrest, and because Westbrook bases his excessive force claim only on the Officers' pre-arrest conduct, *Heck* prevents this Court from considering his § 1983 claim. The Court thus **GRANTS** the Officers' motion for summary judgment and dismisses this action.

But one wrinkle remains. Typically, when a Court grants summary judgment, it terminates an action with prejudice. That Sixth Circuit has explained, though, that "[w]hen *Heck* bars a § 1983 claim against an officer, the court should dismiss the claim *without prejudice*." *Chaney-Snell*, 98 F.4th at 710 (emphasis in original). So that is what the Court will do here.

14

## CONCLUSION

For the above reasons, the Court **DENIES** Defendants' Motion to Strike Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 37), but the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 30), and **DISMISSES** this action **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

February 7, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**